In the Matter of Cynthia H. Burola, Appellant, v Tami F. Meek, Respondent. (And Another Related Proceeding.) [882 NYS2d 560]—

Kavanagh, J. Appeal from an order of the Family Court of Albany County (Walsh, J.), entered October 15, 2008, which,

among other things, dismissed petitioner's application, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

Respondent is the adoptive parent of petitioner's daughter, born in 1997 during the parties' relationship. After their relationship ended, the parties entered into a comprehensive agreement in September 2006 detailing the custodial and visitation arrangements for the child that was subsequently incorporated in an order issued by Family Court. Pursuant to the order, the parties agreed to share joint custody of the child, with petitioner having physical custody during the school year and respondent having custody of the child every Thursday through Friday and on alternate weekends. During the summer recess, the child would spend alternate weeks in each parent's care.

Six months after entering into this agreement, petitioner sought a court order that would significantly reduce respondent's right to visit with the child and filed a family offense petition against respondent, as well as a petition seeking sole custody of the child. In turn, respondent filed a petition seeking legal custody of the child, as well as an increase in the amount of time the child is in her custody. She also claimed that petitioner had violated the terms of the existing order by substantially interfering with her right to visitation. After conducting a hearing, Family Court dismissed petitioner's family offense petition.[1] It then continued with hearings on the other pending applications and, near the end of that process, petitioner moved to amend her petition to include evidence of things that had occurred since these proceedings had been commenced. Petitioner also sought an order requiring all parties, including the child, to undergo psychological evaluations. Family Court denied both motions and, upon conclusion of the hearing, dismissed petitioner's petition and partially granted respondent's petition to modify custody by directing that each parent have custody on alternating weeks.[2] Petitioner now appeals from Family Court's order.

Initially, we note that Family Court did not abuse its discretion by denying petitioner's motion to amend her modification petition so that she could introduce testimony from the daughter's therapist to the effect that the child's emotional health had deteriorated since the petition had been filed. It is

1. Petitioner has not appealed from the dismissal of the family offense petition in which she alleged that respondent had uttered threats against her and the child.

2. The record does not contain any finding by Family Court on respondent's petition claiming that petitioner had violated the existing visitation order.

for Family Court to decide, in the sound exercise of its discretion, if it is appropriate to allow a party to amend a pleading and that decision must focus on a number of factors, including the prejudice to the opposing party that will result if the application is granted (*see Matter of Lamar Rashard Justin Trevon B.*, 32 AD3d 754, 755 [2006]; *Matter of Tina T. v Steven U.*, 243 AD2d 863, 863-864 [1997], *lv denied* 91 NY2d 805 [1998]; *see also Matter of Harry P. v Cindy W.*, 48 AD3d 1100, 1100 [2008]). While leave to amend a pleading may be granted "at any time" (CPLR 3025 [b]; *see* Family Ct Act § 165 [a]), we note that petitioner's application was not made until the hearing was near completion and some two months after petitioner had rested and finished presenting her proof in support of her application. Petitioner's failure to include a proposed amendment with the motion simply served to reinforce Family Court's conclusion that the timing of the application—almost five months after the hearings began—did not provide respondent with adequate notice so that respondent could address the new allegations that were contained in it. The prejudice to respondent, given the timing of this application, was self-evident, and Family Court's denial of petitioner's motion to amend the petition under the circumstances represented a sound exercise of its discretion (*see Matter of Mack v Grizoffi*, 13 AD3d 912, 913 [2004]).

Nor did Family Court err by denying petitioner's request that all involved, including the child, be required to partake in psychological examinations. Petitioner argued that these examinations were necessary to properly assess respondent's claim that petitioner had deliberately engaged in a course of conduct that was designed to alienate the child from respondent. Again, this is a decision that rests within the exercise of Family Court's discretion (*see* Family Ct Act § 251 [a]; *Matter of Kubista v Kubista*, 11 AD3d 743, 745 [2004]; *Matter of Paul C. v Tracy C.*, 209 AD2d 955, 955 [1994]). Here, the court concluded—after hearing extensive testimony on these and other issues from numerous witnesses, including petitioner, respondent and the child's therapist—that it possessed sufficient information to render an informed decision on this issue and did not need to subject the parties and, particularly, the child, to a psychological evaluation. Its decision, especially in light of the fact that it had conducted two *Lincoln* hearings that focused, in part, on this issue, represented a sound exercise of its discretion and enjoyed ample support in the record (*see Matter of Johnson v Williams*, 59 AD3d 445, 445 [2009]).

Petitioner also challenges Family Court's conclusion that she

deliberately engaged in a course of conduct designed to alienate the child from respondent and that such conduct constituted a change in circumstance that warranted a complete review of the existing custodial arrangement (*see Matter of Zwack v Kosier*, 61 AD3d 1020, 1021 [2009]; *Posporelis v Posporelis*, 41 AD3d 986, 989 [2007]; *Matter of Adams v Franklin*, 9 AD3d 544, 545 [2004]). Examples abound of petitioner, either personally or through surrogates, engaging in such conduct and establish that she is either unable or unwilling to do what is needed and necessary to facilitate a parental relationship between respondent and their child, even though such a relationship is clearly in the child's best interests. For example, petitioner, despite her obvious love for the child, systematically engages in conduct that increases, rather than diminishes, the trauma and anxiety that the child routinely experiences whenever she leaves petitioner and is placed in respondent's care. She refuses to use respondent's name whenever she refers to the child and has encouraged the child to abandon respondent's surname as well. She routinely fails to keep respondent informed of the child's ongoing activities and has not kept her advised concerning important details involving the child's medical care. While much of this evidence has been the subject of intense dispute during this lengthy hearing, it is for Family Court, in the first instance, to determine the credibility of such evidence and its conclusions will not be disturbed unless they clearly constitute an abuse of the court's discretion and are without any support in the record (*see Matter of Smith v Smith*, 61 AD3d 1275, 1277 [2009]; *Posporelis v Posporelis*, 41 AD3d at 991; *Matter of Musgrove v Bloom*, 19 AD3d 819, 820 [2005]). This record, despite petitioner's contentions to the contrary, is replete with evidence supporting the court's conclusion that petitioner sought to alienate the child from respondent and that such a finding warrants a review of the existing custodial arrangement.

Family Court, concluding that such a change in the custodial arrangement was indeed necessary to ensure the child's best interests, considered how long the existing custodial arrangement had been in place, the child's needs and wishes, each parent's past performance and relative fitness and each parent's respective ability to provide for the child's intellectual and emotional development (*see Eschbach v Eschbach*, 56 NY2d 167, 172 [1982]; *Matter of Miller v Murray*, 61 AD3d 1295, 1296 [2009]; *Matter of Sloand v Sloand*, 30 AD3d 784, 785 [2006]; *Kaczor v Kaczor*, 12 AD3d 956, 958 [2004]). Again, taking into account the court's "opportunity to evaluate the credibility of the parties and witnesses, we accord great deference to that court's custodial determination unless it lacks a sound and

substantial basis in the record" (*Matter of Diffin v Towne*, 47 AD3d 988, 990 [2008], *lv denied* 10 NY3d 710 [2008]; *see Miller v Murray*, 61 AD3d at 1296-1297; *Matter of Anson v Anson*, 20 AD3d 603, 604 [2005], *lv denied* 5 NY3d 711 [2005]; *Kaczor v Kaczor*, 12 AD3d at 958).

Here, Family Court concluded that respondent was able to provide a stable and suitable home environment for the child that would promote a healthy relationship between the child and her entire family. It noted that respondent allowed the child, when in her care, to maintain daily contact with petitioner, as well as other members of petitioner's extended family. Respondent also had photographs of petitioner and her family placed throughout her home so as to ease the adjustment that the child had to make when she had left petitioner's home and was placed in respondent's care. Petitioner, as previously noted and as Family Court found, has not reciprocated in this effort and seems determined not to allow respondent to enjoy a normal relationship with the child. In that regard, petitioner will not allow respondent in her home and has promoted a belief in the child that respondent is not her mother. Petitioner has communicated with the child regarding ongoing court proceedings and appears to have suggested to the child that if respondent prevails, such a determination will adversely affect her. This evidence, as well as the other proof presented at the hearing, supports Family Court's determination that the child would only enjoy a wholesome relationship with both of her parents— something that was clearly in her best interests—if her time with respondent was significantly increased.

Moreover, contrary to petitioner's claim, Family Court did take into account the fact that the child did not want to continue overnight visitation with respondent. After twice meeting with the child, Family Court was well aware of the child's wishes and clearly took them into account in reaching its decision. However, as noted by the court, a child's wishes are but one factor and are not determinative regarding decisions relating to custody and visitation (*see Matter of Smith v Smith*, 61 AD3d at 1277-1278). This is especially true where the evidence received at the hearing supports the court's finding that the child has been manipulated by one of the parties and the child's views regarding her relationship with the other party are the product of that manipulation (*see Matter of Whitley v Leonard*, 5 AD3d 825, 827 [2004]). In short, Family Court's custodial determination was supported by a sound and substantial basis in the record and should be affirmed (*see Matter of Martin v Martin*, 61 AD3d 1297, 1299 [2009]). Petitioner's remaining claims have been reviewed and found to be lacking in merit.

Spain, J.P., Kane, Malone Jr. and McCarthy, JJ., concur.
Ordered that the order is affirmed, without costs.

